## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TONY R. HEWITT, ID # 37466-177,** | ) | |
| **Movant,** | ) | |
| **vs.** | ) | **No. 3:16-CV-603-B-BH** |
| | ) | **No. 3:08-CR-167-B (2)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the third amended *Motion under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received April 27, 2017 (doc. 35), as supplemented and amended (docs. 40, 53), should be **DENIED** with prejudice.

## I.  BACKGROUND

Tony R. Hewitt (Movant) challenges his federal conviction and sentence in Cause No. 3:08-CR-167-B(2).  The respondent is the United States of America (Government).

On November 19, 2008, Movant and others were charged by superseding indictment with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 (Counts One, Fourteen through Sixteen, Twenty, Twenty-four, Twenty-eight, Thirty-two, and Thirty-six); bank robbery in violation of 18 U.S.C. § 2113 (a), (d) and § 2 (Counts Twenty-two, Twenty-six, Thirty, Thirty-four, and Thirty-eight); attempted bank robbery in violation of 18 U.S.C. § 2113 (a), (d) and § 2 (Counts Three and Eighteen); using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i), (C)(i) (Counts Two, Four, Seventeen, Nineteen, Twenty-one, Twenty-three, Twenty-five, Twenty-seven, Twenty-nine, Thirty-one, Thirty-three, Thirty-five, Thirty-seven, and Thirty-nine); and being a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Six).  (*See* doc. 97.)[1]

Movant pled not guilty, and along with several co-defendants, was tried before a jury.

A.    **Trial**[2]

On January 28, 2008, Movant and others robbed a Citi Bank in Garland, Texas, of $5,000.

On February 1, 2008, Movant and others robbed a Comerica Bank in Desoto, Texas, of $245,000.

On March 28, 2008, Movant and others robbed a Century Bank in Dallas, Texas; a dye-pack

exploded and tainted almost all of the stolen money as they were leaving, and they abandoned it.

Later that day, Movant and others robbed the State Bank of Texas in Garland of $14,700.  Using a

taser to stun bank tellers, Movant and others robbed a Bank of America in Irving, Texas, of $84,000,

on April 24, 2008.

The Federal Bureau of Investigation (FBI) obtained a cell site "dump" corresponding to the

area and time of a dozen bank robberies between November 15, 2007, and April 24, 2008.  The

"dump" showed the cellular telephones using the cell tower closest to the banks at the time of the

robberies, which included those of Movant and another suspected robber.  The FBI also obtained

information from four informants concerning the identities and activities of some of the robbers.

On May 15, 2008, FBI agents, who were on high alert because of the bank robberies,

observed two of the suspects near the Bank of America in Fort Worth, Texas, who they believed

were casing a bank in the area.  The following day, FBI agents once again observed other suspects

in the same area.  On that day, Movant and others went to a Bank of America in Fort Worth, Texas,

for another planned robbery.  One of the robbers became suspicious that a man outside of the bank

---

[1]  Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:08-CR-167-B(2).

[2]  The facts are taken from the appellate court's summary of the evidence at trial and the order denying the motions to suppress wiretap evidence.

seemed to be aware that there was going to be a robbery, so he canceled it.

On May 21, 2008, an FBI surveillance team saw several people casing two different Bank of America locations in Richardson, Texas. At 10:35 p.m., the Director of the FBI and Attorney General determined that an emergency situation existed to justify the interception of communications over a suspect's telephone, and shortly after midnight on May 22, the FBI began intercepting calls on that suspect's telephone without a warrant. Information from the wiretap suggested that a robbery was imminent. The suspects abandoned the plan to rob the banks in Richardson, however, because they believed that the FBI was aware of the plan. The government subsequently applied for, and obtained wiretap orders for the interception that had already begun on an emergency basis, and for a 30–day wiretap on the telephone on May 23. An order authorizing the interception of calls from a cellular phone used by another one of the suspects was obtained on May 30, 2008.

Through telephone intercepts, the FBI learned that the suspects were planning a robbery at the Regions Bank in Garland, Texas, on June 2, 2008. Near the Regions Bank, FBI agents observed two suspects parking a vehicle that had been stolen for the robbery. They met with two other suspected robbers in the bank's parking lot. Two others parked behind the stolen vehicle. Law enforcement officials then moved in to arrest them. Two were arrested without incident, but the other five heavily armed suspects fled. They were apprehended after high-speed chases, hostage-taking, kidnapping, police stand-offs, and collisions. Guns were used in all the robberies. *See United States v. Duffey*, 456 F. App'x 434, 436-38 (5th Cir. 2012); *see also* (doc. 230; *United States v. Duffey*, 2009 WL 2356156 (N.D. Tex. July 30, 2009)).

The jury convicted Movant of Counts One through Four, Six, and Fourteen through Thirty-

nine.  (*See* doc. 374.)

## B.    Sentencing

On October 16, 2009, the United States Probation Office (USPO) submitted a Presentence

Report (PSR) that applied the 2008 United States Sentencing Guidelines Manual (USSG).  (*See* doc.

418 at 15, ¶ 33.)  For the conspiracy to commit bank robbery offenses (Counts One, Fourteen

through Sixteen, Twenty, Twenty-four, Twenty-eight, Thirty-two, and Thirty-six), the PSR

calculated a total offense level of 39, with a guideline range of 324-405 months, but the statutory

maximum sentence for each count was 60 months.  (*See id*. at 36, ¶ 149.)  The other counts had the

same offense level and guideline range.  For the bank robbery offenses (Counts Twenty-two,

Twenty-six, Thirty, Thirty-four, and Thirty-eight) and attempted bank robbery offenses (Counts

Three and Eighteen), the statutory maximum for each count was 300 months.  (*See id*. at 37, ¶ 149.)

For the felon in possession of a firearm offenses (Count Six), the statutory maximum was 120

months.  (*See id*. at 36, ¶ 149.)  A mandatory sentence of 60 months was required by § 924(c)(1)(A)

for the first conviction for use of a firearm during a crime of violence (Count Two), and mandatory

sentences of 300 months were required by § 924(c)(1)(C) for the other convictions for use of a

firearm during a crime of violence (Counts Four, Seventeen, Nineteen, Twenty-one, Twenty-three,

Twenty-five, Twenty-seven, Twenty-nine, Thirty-one, Thirty-three, Thirty-five, Thirty-seven, and

Thirty-nine).  (*See id* at 37, ¶ 149.)

At sentencing on January 28, 2010, the two-level increase for use of body armor was

eliminated.  (*See* doc. 400 at 28.)  Movant was sentenced to imprisonment for 60 months for Counts

One, Fourteen, Fifteen, Sixteen, Twenty, Twenty-four, Twenty-eight, Thirty-two, and Thirty-six;

120 months for Count Six; and 300 months for Counts Three, Eighteen, Twenty-two, Twenty-six,

Thirty, Thirty-four, and Thirty-eight, to be served concurrently. He was sentenced to imprisonment for 60 months for Count Two, and to 300 months for Counts Four, Seventeen, Nineteen, Twenty-one, Twenty-three, Twenty-five, Twenty-seven, Twenty-nine, Thirty-one, Thirty-three, Thirty-five, Thirty-seven, and Thirty-nine, to be served consecutively. (*See* doc. 374 at 2.) His total sentence was 4,260 months (355 years). (*See id*.)

On appeal, the convictions for the attempted bank robberies (Counts Three and Eighteen) were reversed and vacated for insufficient evidence, as were the corresponding convictions for use of a firearm during the attempted bank robberies (Counts Four and Nineteen). *Duffy*, 456 F. App'x at 444. The case was remanded for resentencing. *Id*. at 445.

## C.    Re-Sentencing

On remand, the Probation Office prepared an addendum to the PSR that was consistent with the Court's rulings on the original PSR. (*See* doc. 620.) Movant was sentenced to imprisonment for 60 months for Counts One, Fourteen, Fifteen, Sixteen, Twenty, Twenty-four, Twenty-eight, Thirty-two, and Thirty-six; and 120 months for Count Five; 293 months for Counts Twenty-two, Twenty-six, Thirty, Thirty-four, and Thirty-eight, to be served concurrently. He was sentenced to imprisonment for 60 months for Count Two, and to 300 months for Counts Seventeen, Twenty-one, Twenty-three, Twenty-five, Twenty-seven, Twenty-nine, Thirty-one, Thirty-three, Thirty-five, Thirty-seven, and Thirty-nine, to be served consecutively. (*See* doc. 506 at 2.) His total sentence was 3,653 months (304 years and 5 months). (*See id*.) The amended judgment was affirmed on appeal. *United States v. Ross*, 582 F. App'x 528 (5th Cir. 2014).

## D.    Substantive Claims

Movant raised the following grounds:

(1)    There was a *Brady* violation and prosecutorial misconduct because the prosecutors failed to disclose the data-mining technique used to listen to his cell phone conversation;

(2)    Trial counsel was ineffective for failing to:

    (a)    conduct an adequate pretrial investigation and discover the data-mining technique;

    (b)    suppress the wiretap evidence;

    (c)    seek a *Franks* hearing on the insufficient affidavit used to obtain the wiretap;

    (d)    request a jury instruction on conspiracy to commit armed bank robbery aiding and abetting armed bank robbery;

    (e)    instruct the trial court to make pretrial findings on the relevance and reliability of the case agent's expert opinion testimony;

    (f)    object or raise an issue about the lack of a jury instruction on whether there was a single conspiracy or multiple conspiracies;

    (g)    object to the prosecutor's emphasis of the court's role in determining the credibility of a corroborating witness and the court's bolstering of the witness;

(3)    Appellate counsel was ineffective for failing to:

    (a)    raise an issue about the in sufficiency of the application for the wiretap;

    (b)    raise an issue about the lack of a jury instruction on armed bank robbery and aiding and abetting armed bank robbery;

    (c)    raise an issue about the court's failure to make pretrial findings regarding the case agent's expert opinion testimony;

(4)    The convictions and consecutive sentences under § 924(c) are not fair and just;

(5)    The convictions and sentences under § 924(c) were erroneous because bank robbery is not a crime of violence;

(6)    The first conviction under § 924(c) should be vacated because conspiracy to commit bank robbery fell under the residual clause of the statute, and the additional convictions under § 924(c) should also be vacated.

(3:16-CV-603-B, doc. 35 at 7-8, 11-13, 14-15; doc. 40 at 2; doc. 53 at 1.)  The Government filed a response, and Movant filed a reply.  (*Id.*, docs. 48, 50.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

## III. EXCULPATORY EVIDENCE

Movant contends that the prosecutors committed a *Brady* violation by failing to disclose the

data-mining technique used to illegally listen to his cell phone conversation.[3]  He relies on a news article stating that the FBI used a "location data-mining technique" to apprehend him and his co-defendants, and that "FBI agents obtained logs from mobile phone companies corresponding to what their cellular towers had recorded at the time of a dozen different bank robberies in the Dallas area. The voluminous records showed that two phones had made calls around the time of all 12 heists, and that those phones belonged to [Movant and a co-defendant]."  (3:16-CV-603-B, doc. 35 at 39.)

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed.  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

The use of cell site records to show that Movant and a co-defendant made phone calls at the time of the robberies and near the locations of the robberies was disclosed before trial, and Movant and counsel were aware of it.  Movant's motion to suppress the evidence obtained from wiretaps stated that FBI agents looked at the "dump."  (*See* doc. 101 at 2.)  The government's response to several of Movant's motions stated that the FBI obtained cell site records between November 2007

---

[3] Although Movant also claims the failure to disclose the evidence was prosecutorial misconduct, he does not allege any misconduct other than a *Brady* violation.

and April 2008. (*See* doc. 118 at 7-8.) The government explained that a "dump" showed all of the cellular telephones that used the cell tower close to each bank at the time it was robbed. (*See id*. at 8.) The order denying Movant's motion to suppress wiretap evidence also noted that the FBI obtained cell site information through the "dump." (*See* doc. 230 at 2.) Because the fact that the FBI obtained cell site historical records was disclosed before trial, Movant has not shown that there was a *Brady* violation.[4]

Nor has he shown that the cell site records were exculpatory or that they were suppressible. There is no expectation of privacy in cell site records. *In re Application for Cell Tower Records under 18 U.S.C. § 2793(d)*, 90 F. Supp. 3d 673, 677 (S.D. Tex. 2015) (citing *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600, 611-15 (5th Cir. 2013). The Fourth Amendment does not prohibit the government from obtaining historical cell tower data for all cell phones used at the time of a crime. *Id*. at 675-77 (citing *Historical Cell Site Data*, 724 F.3d 600). To the extent that the information was obtained in violation of the Stored Communications Act (18 U.S.C. § 2701, *et seq*.), suppression of evidence is not a remedy. *United States v. Guerrero*, 768 F.3d 351, 358-59 (5th Cir. 2014).

Movant is not entitled to relief on this claim.[5]

---

[4] Although Movant asserts that the "data-mining technique" was used to listen to his phone conversations, the government action about which he complains was the obtaining of cell site historical records of cell phones that used the cell towers. There is no evidence that the cell site records included recorded or live cell phone conversations. After the government obtained cell site records, the government obtained wiretap warrants to intercept phone calls.

[5] The Government contends that the claim is procedurally barred. A court may deny a claim on its merits in lieu of applying a procedural bar. *See Logan–Gates v. Quarterman*, No. 3:08–CV–1683–B, 2009 WL 3614481, slip op. at *7 (N.D. Tex. Oct. 29, 2009) (recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov.12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), accepted by 2005 WL 1058865 (N.D.Tex. May 2, 2005). Because Movant raises a claim of ineffective assistance of counsel for failing to discover the material that is the subject of his *Brady* claim, the administration of justice would be better served by bypassing the procedural issue and reaching the merits of the *Brady* claim.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466

10

U.S. at 695-96.

To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.    <u>Pretrial Investigation</u>

Movant contends that counsel was ineffective for failing to adequately investigate the case and to discover the data-mining technique that was used. As discussed, counsel was aware that the government obtained cell site historical records. Movant has not shown that he is entitled to relief on this claim.

## B.    <u>Wiretap Evidence</u>

Movant contends that counsel did not argue whether the appropriate person or persons authorized or approved the wiretap applications at the suppression hearing. It appears that those issues were raised in the motion to suppress, however. (doc. 101 at 3, 5). Although counsel did not argue those issues at the hearing, (doc. 356), the court considered them and found that they lacked merit, (doc. 230 at 10-11). Movant has not shown that counsel was ineffective for failing to argue

issues at the suppression hearing that were raised in the briefing and actually considered by the court.

## C.    *Franks* Hearing

Movant also contends that counsel failed to seek a *Franks* hearing on the government's insufficient affidavit.  Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to a hearing if he makes a substantial showing that the allegations in a supporting affidavit for a warrant were deliberate falsehoods or made with a reckless disregard for the truth, and that after the false statements are removed, the affidavit is not sufficient to support a finding of probable cause.

Although Movant argues that the affidavit was insufficient based on the failure to name the FBI Director or Attorney General or to establish an emergency, he does not identify any allegedly false statements in a supporting affidavit.  He has not shown that absent any specific statements, the affidavit did not provide probable cause for a wiretap warrant.  Because he has not shown that he was entitled to a *Franks* hearing, he has not shown that counsel was ineffective for failing to one. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections").

## D.    Jury Instructions - Bank Robbery and Aiding and Abetting

Movant contends that counsel failed to request jury instructions on conspiracy to commit armed bank robbery and aiding and abetting armed bank robbery.  The jury charge included instructions on the charged offenses.  (*See* doc. 237 at 14-27).  The instructions were consistent with the Fifth Circuit pattern jury instructions for criminal cases.  Movant has not shown that there was an additional authorized instruction that counsel should have requested.  *See Kimler*, 167 F.3d at 893; *see also Koch*, 907 F.2d at 527.

**E.**    **Jury Instruction - Single Conspiracy**

Movant contends that counsel failed to request an instruction for the jury to determine whether there was a single conspiracy or multiple conspiracies to rob banks. He claims that his sentence would have been lower if he had been convicted of only one single conspiracy instead of several multiple conspiracies.

On appeal, Movant contended that the evidence showed that there was only one conspiracy and not multiple conspiracies. *See Duffey*, 456 F. App'x at 439. The Fifth Circuit found that the evidence was sufficient to show there were multiple conspiracies. It reasoned that "[a]lthough the conspiracies had a certain continuity of personnel and a certain similarity in method, the jury's return of multiple conspiracy convictions is supported by the evidence: there were separate and distinct agreements for each robbery; the actual acts in the separate counts of the indictment, both alleged and proved, were different; the geographic locations of the individual crimes were sufficiently distinct, and the timing of the conspiracy was sufficiently long to suggest the existence of separate agreements. Stated differently, although a loose confederacy committed the crimes and the crimes underlying the conspiracies were the same, the evidence ... is substantial, so as to support the jury's finding of multiple conspiracies." *Id*. at 441. The Fifth Circuit found that "the [defendants] presented no evidence showing that there was an overarching plan connecting one robbery to another. Furthermore, they presented no evidence supporting the existence of a single, umbrella-agreement, covering their myriad of criminal escapades. Indeed, the planning and agreement for the respective robberies and attempted robberies appears to have been from day-to-day and bank-to-bank." *Id*. at 440.

The Fifth Circuit did observe that "[t]he jury was not instructed to find whether a single

13

conspiracy or multiple conspiracies exist here. The jury was, however, instructed on nine conspiracy counts, requiring the prosecution to present proof of [multiple], separate agreements. Presumably, if the prosecution failed to meet this burden, then the jury would not have returned convictions on [multiple], different conspiracies." *Id*. at 439 n.5.

Because there was substantial evidence that there were multiple conspiracies, and there was no evidence that there was a single plan or agreement for all of the robberies, Movant has not shown that counsel's failure to request a jury instruction on the matter was deficient. Even assuming deficient performance, however, he has also not shown that he was prejudiced. As the Fifth Circuit stated, if the government failed to prove that there were multiple separate agreements, the jury would not have convicted on multiple conspiracies.

## F.   **Expert Testimony**

Movant contends that counsel failed to request that the court make pretrial findings under Fed. R. Evid. 701 and 702 on the relevance and reliability of the FBI case agent's expert testimony on the coded terminology that the bank robbers used. During the trial, counsel argued that the government should be required to qualify the case agent as an expert under Rules 701 and 702 if the he was going to testify about the language, or "bank robber jargon," the defendants allegedly used during the robberies. (*See* doc. 360 at 7-11.) The court held that the case agent did not need to be qualified as an expert because he only testified about the meaning of what the defendants allegedly said during the robberies in this case, and not as an expert on language used by bank robbers generally. (*See id*. at 13-14.) At trial, counsel unsuccessfully raised the argument that Movant now claims that should have been raised before trial. Because the court held that the argument lacked merit, Movant has not shown that counsel was ineffective for failing to raise that argument earlier.

G.   **Bolstering Witnesses**

Movant contends that counsel failed to object to the prosecutor's emphasizing the court's role in determining the credibility of the accomplice witnesses and to the court's bolstering of those witnesses.   He asserts that the prosecutor bolstered the witnesses with the plea agreements' provisions that they testify truthfully, and by stating that only the court could decide if they cooperated by testifying truthfully and suggesting that the court was monitoring their testimony and would not allow it if it was not truthful.  (*See* doc. 50 at 17.)

The prosecutor did not state or suggest that the court had a role in determining or monitoring the credibility of a witness.  One of the witnesses testified that he pled guilty, that the court would determine his sentence, and that the prosecutor had no control over the sentence that he would receive. (*See* doc. 364 at 53-54.)  The court instructed the jury that "the testimony of a co-defendant should be received with caution and weighed with great care." (*Id*. at 55.)  The witness testified that the plea agreement required him to testify truthfully and that he would get in trouble with the judge if he lied.  (*See id*. at 128-29.)  The court sustained an objection to bolstering.  (*See id*. at 128.) When he was asked who would decide his sentence, the court sustained an objection that the question had been asked and answered. (*See id*. at 129.)  On cross-examination, the witness was asked at length about the potential sentence he faced and the effect that his testimony could have on it. (*See id*. at 184-90.)  He admitted that he expected to get a reasonable sentence by testifying. (*See id*. at 190.)  On redirect examination, the witness testified that the prosecutor never promised to ask the court to give him a lower sentence.  (*See id*. at 199.)

The other accomplice witness also pled guilty.  (*See* doc. 365 at 99-100.)  She did not have an agreement with the prosecutor about the length of her sentence, and the sentence was going to

be imposed by the court. (*See id*. at 102.) The court again instructed the jury that an accomplice's testimony "should be received with caution and weighed with great care." (*See id*. at 102-03.) On cross-examination, she testified that she expected, hoped, or believed that she would receive a lighter sentence because she cooperated with the government. (*See id*. at 159.)

The court's role in sentencing was brought up to suggest that the accomplice witnesses were not testifying falsely to please the prosecutor because the prosecutor did not have control over their sentences. Testimony about the court's role in sentencing did not suggest that the court was ruling on the witnesses' credibility. Movant has not shown that counsel was ineffective for failing to make a futile or meritless objection. *See Kimler*, 167 F.3d at 893; *see also Koch*, 907 F.2d at 527.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*, and the movant must show a reasonable probability that he would have prevailed on his appeal but for counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."

*Williamson*, 183 F.3d at 462–63 (footnote and citations omitted).  To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

Movant contends that appellate counsel was ineffective for failing to raise issues about the insufficiency of the application for the wiretap; the lack of a jury instruction on armed bank robbery and aiding and abetting armed bank robbery; and the court's failure to make pretrial findings regarding the case agent's expert testimony.  As discussed, Movant has not shown that those issues had merit or that there was reasonable likelihood that he would have prevailed on those issues.  He has not shown that counsel was ineffective for failing to raise those issues on appeal.

## VI.  SECTION 924(C) SENTENCES

Movant contends that the consecutive sentences for the § 924(c) offenses were not fair and just.  He claims that the prosecutor has discretion to agree to set aside two or more of the § 924(c) sentences so that he may have a just sentence.

As noted, a movant may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal.  *Willis*, 273 F.3d at 595.  To overcome the bar, the movant must show "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.

The issue about the fairness or justness of consecutive sentences was not raised on appeal.  Movant has not shown any reason for the failure to raise that issue on appeal, and he does not assert cause and prejudice to excuse the procedural bar.  He is procedurally barred from raising this claim in his § 2255 motion.  His claim is also not cognizable.  It does not present a constitutional ground or a claim of error that could not have been raised on appeal and would result in a complete miscarriage of justice.  *See United States v. Gaudet*, 81 F.3d at 589.

Movant also contends that the convictions and sentences under § 924(c) should be set aside because bank robbery and conspiracy to commit bank robbery are not crimes of violence. Movant refers to the "residual clause" of § 924(c).

Section 924(c)(1) provides for an enhanced sentence if a person uses or carries a firearm during and in relation to a crime of violence, or possesses a firearm in furtherance of a crime of violence. A "crime of violence" is defined as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B).

Recent Supreme Court decisions have found clauses similar to § 924(c)(3)(B) in other statutes that also enhance sentences based on a violent felony or crime of violence, known as residual clauses, are unconstitutionally vague. *See Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) (18 U.S.C. § 16(b)); *Johnson v. United States*, 135 S.Ct. 2251 (2015) (18 U.S.C. § 924(e)(2)(B)). The Fifth Circuit has held in post-*Johnson* cases that the federal offense of bank robbery under § 2113 is a crime of violence under § 924(c)(3)(A), however. *United States v. Cosner*, 690 F. App'x 292 (5th Cir. 2017); *United States v. Brewer*, 848 F.3d 711, 714-16 (5th Cir. 2017). Moreover, conspiracy to commit a crime of violence is itself a crime of violence. *United States v. Sealed Appellant 1*, 591 F.3d 812, 821 (5th Cir. 2009). Because Movant's crime of violence claim lacks merit, it is not necessary to determine whether it is also procedurally barred for failing to raise it on appeal.

## VII. EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record

conclusively shows that Movant is entitled to no relief, so no hearing is required.

## VIII.  RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* under 28 U.S.C. § 2255 should be

**DENIED** with prejudice.

**SIGNED** this 25th day of July, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE